UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ANGELA ROBERSON-KING | CIVIL ACTION NO. 16-1053 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| STATE OF LOUISIANA WORKFORCE COMMISSION | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss and, in the Alternative, Motion for Summary Judgment (Record Document 17) filed by Defendant State of Louisiana, Louisiana Workforce Commission, Office of Workforce Development, Louisiana Rehabilitative Services ("LRS" or ""Defendant"). Defendant argues that Plaintiff Angela Roberson-King's ("Roberson-King") complaint fails to provide sufficient factual allegations to state a claim for relief under Louisiana tort law. Defendant seeks summary judgment in its favor as to Roberson-King's Title VII racial discrimination claim, arguing Roberson-King has failed to show pretext. Roberson-King opposed the defense motion. See Record Document 19. For the reasons set forth below, Defendant's motion is **GRANTED** and Roberson-King's Louisiana state law tort claims and her Title VII racial discrimination claim are **DISMISSED**.

**BACKGROUND**

Roberson-King began her employment with the State of Louisiana in 1989. See Record Document 1 at ¶ 3. In 2013, she was promoted within the LRS to Rehabilitation Counselor Master. See Record Document 17-2 at ¶ 1; Record Document 19-1 at ¶ 1. On September 3, 2014, a vacancy for District Supervisor was announced with a closing date of September 8, 2014. See id. at ¶ 2; Record Document 19-1 at ¶ 1. Roberson-King

applied for the position during the open application period. See id. at ¶ 3; Record Document 19-1 at ¶ 1. Four qualified candidates, having met the minimum qualifications for the position, were interviewed on September 29, 2014: Roberson-King (African-American), Teresa Hefner (Caucasian), Cindy Hill (Caucasian), and Mara Lott Patten ("Patten") (Caucasian). See id. at ¶ 4; Record Document 19-1 at ¶ 1. John Vaughan ("Vaughan"), the LRS Shreveport Regional Manager along with Deborah Aymand ("Aymand"), LRS Lafayette Regional Manager, conducted the interviews. See id. at ¶ 5; Record Document 19-1 at ¶ 1. Vaughan and Aymand asked all four interviewees the same questions. See id. at ¶ 6; Record Document 19-1 at ¶ 1. Of the four interviewees, Patten was the only candidate with both a Master's degree and a Certified Rehabilitation Counselor ("CRC") certification. See id. at ¶ 7; Record Document 19-1 at ¶ 1.

Defendant submits that after reviewing performance records, interview notes, and certifications, Vaughan felt Patten was the most qualified candidate for the position. See id. at ¶ 10. Conversely, Roberson-King disputes Vaughn's motivations in promoting Patten, specifically that Patten was the most qualified candidate. See Record Document 19-2 at ¶ 5. Vaughan recommended Patten to his supervisor, Ken York ("York"), Acting Director of LRS for the District Supervisor position. See Record Document 17-2 at ¶ 11; Record Document 19-1 at ¶ 6. York then forwarded the recommendation of Patten, along with his approval, to Bryan Moore ("Moore"), Director of Office of Workforce Development and the appointing authority. See id. at ¶ 12; Record Document 19-1 at ¶ 7. Moore accepted the recommendation of Patten and she was announced as District Supervisor on October 16, 2014. See id. at ¶ 13; Record Document 19-1 at ¶ 7.

Roberson-King filed a Charge of Discrimination. See Record Document 1 at ¶ 15.

The Equal Employment Opportunity Commission issued a Notice of Right to Sue dates April 19, 2016.  See id., Exhibit 1.  Roberson-King filed the instant lawsuit in July 2016, alleging racial discrimination under Title VII, breach of a duty under Louisiana Civil Code Article 2315, and intentional infliction of emotional distress.  See id. at ¶¶ 12-13.  Defendant has now moved to dismiss all of Roberson-King's claims.  See Record Document 17.

**LAW AND ANALYSIS**

**I.	Rule 12(b)(6) Standard.**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted."  While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007).  A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.  The Supreme Court expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the

complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2009).

## II. Summary Judgment Standard.

Rule 56(a) provides, in pertinent part:

> Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added); see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Quality Infusion Care, Inc., 628 F.3d at 728. "Rule 56 [(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## III. Analysis.

## A. Article 2315 General Negligence Claim.

Roberson-King alleges that unlawful discrimination in violation of Title VII constitutes a breach of a statutory duty and gives rise to tort liability under Louisiana law. Defendant has moved to dismiss this state law claim under Rule 12(b)(6), arguing that Roberson-King cannot sue for a negligence tort claim under Article 2315 while also suing under a more specific anti-discrimination statute.

In Gluck v. Casino Am., Inc., 20 F.Supp.2d 991 (W.D. La. 1998), the district court examined the interplay between the plaintiff's Article 2315 general negligence claim and his claim under the Age Discrimination in Employment Act ("ADEA"). The court held:

> This opinion should not be read to mean that an employee may never state a claim against an employer under Article 2315. A plaintiff seeking to proceed against his employer under Article 2315 need only allege the breach of a legally recognized duty (such as the prohibition against intentional infliction of severe emotional distress) for which the state legislature has not specifically provided a remedial scheme. This Plaintiff does not urge any basis for liability under Article 2315 other than derivative application of the ADEA. The Louisiana legislature has enacted a specific remedial system, in the form of the LADEA, for redressing claims of age discrimination, for which limited remedies are available. The specific LADEA supplants any state law claim for age discrimination under the more general Article 2315.

Id. at 995. Here, Roberson-King has alleged breach of a statutory duty giving rise to liability under Article 2315. Such claim is based on the same conduct of Defendant as her Title VII racial discrimination claim. The Louisiana legislature has provided a remedial scheme for such discrimination in the form of the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301, *et seq.* As stated by the Gluck court, the specific LEDL supplants any state law claim for racial discrimination under the more general Article 2315. Thus, Defendant's Rule 12(b)(6) Motion is granted as to Roberson-King's Article 2315 claim.

### B. Intentional Infliction of Emotional Distress ("IIED") Claim.

Defendant has also moved to dismiss Roberson-King's IIED claim pursuant to Rule 12(b)(6). Roberson-King maintains that IIED is a fact-intensive inquiry and she has sufficiently alleged its elements to escape dismissal under Rule 12(b)(6).

"To recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to establish liability. Id. Individuals are "expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Id. Simply put, "the distress suffered must be such that no reasonable person could be expected to endure it." Id. at 1210. Liability will only attach when the mental suffering or anguish is "extreme." Id. Applying Louisiana state law, one Louisiana federal district court noted:

> A review of the Louisiana jurisprudence indicates that severe emotional distress may be found "where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. A non-exhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia, and shock.

Pate v. Pontchartrain Partners, LLC, No. CIV.A. 13-6366, 2014 WL 5810521, at *4 (E.D.

La. Nov. 7, 2014) (internal quotations omitted). "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." White, 585 So.2d at 1210. Moreover, "the Fifth Circuit has consistently held that 'ordinary employment disputes' do not give rise to an intentional infliction claim." Lester v. Sec'y of Veterans Affairs, 514 F.Supp.2d 866, 881-882 (W.D. La. 2007), citing Deus v. Allstate, 15 F.3d 506, 515 (5th Cir.), *cert. denied*, 513 U.S. 1014, 115 S.Ct. 573 (1994).

Here, the facts plead by Roberson-King are simply not enough to raise a right to relief for IIED above the speculative level. Even accepted as true, her factual allegations are not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. See White, 585 So.2d at 1209. At most, her factual allegations amount to indignities, petty oppressions, and/or ordinary employment disputes. Such allegations are insufficient to survive a Rule 12(b)(6) challenge. See id.; see also Lester, 514 F.Supp.2d at 881-882. Accordingly, Defendant's Rule 12(b)(6) Motion is granted as to Roberson-King's IIED claim.

### C. Title VII Racial Discrimination Claim.

To establish a *prima facie* case of Title VII racial discrimination involving a failure to promote claim, the plaintiff must prove that: (1) she belongs to a protected group under Title VII; (2) she applied for and was qualified for the position she sought; (3) she was not promoted to the position sought; and (4) her employer promoted an employee to the position sought by the plaintiff who was not a member of the protected class. See McFall

v. Gonzales, 143 Fed.Appx. 604, 607 (5th Cir.2005), citing Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316–17 (5th Cir.2004). "If the plaintiff meets these requirements, a presumption of discrimination arises which the defendant must then rebut by articulating a legitimate, nondiscriminatory reason for the [employment decision]." Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993), citing Olitsky v. Spencer Gifts, Inc., 964 F.2d 1471, 1478 n. 19 (5th Cir.1992). Once the defendant articulates a legitimate, nondiscriminatory reason, "the presumption of . . . discrimination established by the employee's prima facie case dissolves." Bodenheimer, 5 F.3d at 957, citing Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 (1981). "Once the [defendant] employer has met its burden of production, the plaintiff's burden of persuasion then arises and [she] must prove that the proffered reasons are not just pretexts but pretexts for . . . discrimination." Bodenheimer, 5 F.3d at 957.

Here, Defendant concedes that Roberson-King "can meet her initial burden of establishing a *prima facie* case" of racial discrimination. See Record Document 17-13 at 9. Thus, for purposes of the instant Memorandum Ruling, the Court will assume that Roberson-King has met her *prima facie* case. Defendant must now rebut Roberson-King's *prima facie* case by articulating a legitimate, nondiscriminatory reason for not promoting Roberson-King. Defendant has submitted the affidavit of Vaughan, stating:

    f.    I alone recommended . . . Patten for the position of District Supervisor.

    g.    Bryan Moore, Appointing Authority, and Director of Office of Workforce Development eventually approved my recommendation of . . . Patten for the position of District Supervisor.

    . . .

    j.       I carefully considered all of the applicants and chose to recommend . . . Patten because she was the most qualified individual for the position.

    k.      I did not consider race when determining the most qualified candidate for the supervisor position.

. . .

    m.     I considered . . . Patten's attainment of a Certified Rehabilitation Counselor ("CRC") certificate to be one of the distinguishing factors in my recommendation of her for the District Supervisor position.

    n.      I am CRC certified and knowledgeable regarding the requirements for such certification and the benefits its brings to the profession.

. . .

    r.      The attainment of a CRC demonstrates initiative and a desire to excel in providing services to individuals with disabilities.

. . .

    t.      As part of the selection process for District Supervisor, I reviewed past Performance Evaluations and monthly reports for the candidates for the position.

    u.      I was aware that both . . . Roberson-King and . . . Patten had always not met their quotas; there were years that they had met or exceeding their quota and years where they had not. I reviewed VR Performance Statistics for the period October 1, 2008 - May 23, 2014 for . . . Roberson-King and . . . Patten prior to making my recommendation.

Record Document 17-6. Vaughan's affidavit offers a legitimate, non-discriminatory reason for the selection of Patten over Roberson-King, that is, Vaughan's belief that Patten was the most qualified individual for the position.[1] Thus, Defendant has satisfied its burden of

---

[1]The Fifth Circuit has held that "[a]n employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection." Alvarado v. Tex. Rangers, 492 F.3d 605, 616 (5th Cir. 2007). However,

presenting a legitimate business reason for promoting someone else in lieu of Roberson-King.  See Mayes v. Office Depot, Inc., 292 F. Supp. 2d 878, 890 (W.D. La. 2003).

Because Defendant has offered a nondiscriminatory reason for its promotion decision, the burden shifts back to Roberson-King to show that Defendant's reason is merely a pretext for discrimination.  Roberson-King may demonstrate pretext by "showing that the employer's proffered explanation is false or unworthy of credence."  Churchill v. Texas Dep't of Criminal Justice, 539 Fed.App'x 315, 319 (5th Cir. 2013), *citing* Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir.2003).  "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action."  Id.  "Alternatively, a fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."  Churchill, 539 Fed.App'x at 319, *citing* EEOC v. La. Office of Cmty. Servs., 47 F.3d 1438, 1444 (5th Cir.1995) (internal quotations omitted).

Here, Roberson-King contends that she was clearly better qualified than Mara Lott Patten.  She argues that her evidence of pretext consists of far more than her own subjective belief.  See Record Document 19 at 12.  She believes allowing the CRC to outweigh all of her "superior qualifications is overwhelming evidence of pretext."  Id. at 14.  Roberson-King points to her seniority; college hours beyond a Master's degree; supervisory experience; selection and participation in a leadership academy; and better performance meeting production quotas.  See id. at 13.  She argues that she "is so much

---

an employer "must articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee."  Patrick v. Ridge, 394 F.3d 311, 317 (5th Cir.2004).  Vaughan's detailed affidavit offers more than vague and conclusional feelings.

better qualified than Patten that race is the only explanation left." Id. at 15. Roberson-King also contends that Moore, the appointing authority, attempted to rescind the promotion of Patten after receiving Roberson-King's grievance. See id. at 13.

The Fifth Circuit has held that it is hard to find untruthfulness on the part of the employer when "its judgments on qualifications are somewhere within the realm of reason." Deines v. Tex. Dep't of Protective & Regulatory Servs., 164 F.3d 277, 282 (5th Cir. 1999). The fact that one candidate has "better education, work experience, and longer tenure with the company do[es] not establish that [she] is clearly better qualified." Price v. Fed. Exp. Corp., 283 F.3d 715, 723 (5th Cir.2002). The "clearly better qualified" standard requires "that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Bright v. GB Bioscience Inc., 305 Fed.Appx. 197, 205 n. 8 (5th Cir.2008), *citing* Deines, 164 F.3d at 280-281.

Here, Roberson-King has compared herself to Patten in several areas, including seniority, supervisory experience, selection and participation in a leadership academy, and quota performance. Yet, there is no dispute that Patten met the job qualifications and possessed her own array of qualifications and certifications, namely a CRC certificate. For example, while Roberson-King had more seniority, Patten had achieved the designation of Master Counselor before Roberson-King. See Record Document 20 at 4. Roberson-King also points to Moore's attempt to rescind the promotion of Patten. A review of Moore's deposition testimony reveals that his actions were based on his concern regarding any employee grievance and his desire for an investigation to see if everything was done in good faith. See Record Document 19-7 at 21-22. The Court has reviewed all of

Roberson-King's proffered summary judgment evidence, including comparative qualifications, and holds that selecting Patten over Roberson-King was well within the realm of reason. The record simply does not support the conclusion that no reasonable person, in the exercise of impartial judgment, could have chosen Patten over Roberson-King for District Supervisor. Roberson-King has failed to raise a genuine dispute as to any material fact that Defendant's selection decision was motivated by racial discrimination. Thus, summary judgment in favor of Defendant is appropriate.

## CONCLUSION

Based on the foregoing analysis, the Court finds that Roberson-King's Article 2315 general negligence claim and IIED fail under Rule 12(b)(6) scrutiny. Her Title VII racial discrimination claim fails as she has failed to raise a genuine dispute as to any material fact that Defendant's selection of Patten over Roberson-King for the District Supervisor position was motivated by racial discrimination. Defendant's Motion to Dismiss and, in the Alternative, Motion for Summary Judgment (Record Document 17) is **GRANTED** and all of Roberson-King's claims are **DISMISSED**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 18th day of October, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE